IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:20-CR-02 |
| | ) | |
| LARRY BARNES, JR., | ) | |
| | ) | |
| Defendant | ) | |

**UNITED STATES' POSITION ON SENTENCING and MOTION FOR ADDITIONAL ONE-POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY**

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney, and Stephen E. Anthony, Assistant United States Attorney, hereby submits its position with respect to sentencing.

The United States contends that the probation officer has properly calculated Defendant's sentencing guidelines range. And, pursuant to the factors contained in 18 U.S.C. § 3553(a), for the reasons stated in the parties' Plea Agreement, and for the reasons set forth below, the United States asks the Court to sentence the defendant to a period of incarceration of 15 years' incarceration on Count Two of the superseding indictment and 10 years' incarceration on Count Three of the superseding indictment, to be served concurrently.[1]

---

[1] Defendant also faces a supervised release violation in case number 3:14-cr-54. The arguments below are equally applicable to his sentencing for that violation. Accordingly, the United States will ask the Court to acknowledge those arguments, insofar as they are applicable, to Defendant's sentencing hearing for the supervised release violation which is to occur the same day as Defendant's sentencing on the instant charges.

I. **BACKGROUND**

A law enforcement investigation into Defendant's drug trafficking produced multiple controlled purchases of heroin from Defendant, and concluded with a search warrant being executed which led to the discovery of large quantities of heroin, cocaine, and marijuana.

Specifically, on October 2, 2019, a confidential source purchased approximately 28 grams of heroin from Defendant. Later that same month, on October 24, 2019, a confidential source purchased approximately 42 grams of heroin from Defendant. Having conducted these controlled purchases and after having observed Defendant, a resident of Chesterfield County, repeatedly travel to a residence in downtown Richmond before and after drug-trafficking activity, led to law enforcement procuring a search warrant for Defendant's apartment in Richmond, located at 1215 E. Main Street Richmond.[2]

Upon executing the search warrant at Defendant's Main Street apartment, law enforcement's suspicions were confirmed that Defendant was a significant drug trafficker in the Richmond area. During the search, law enforcement discovered and recovered 1,049.89 grams of heroin, 936 grams of cocaine, and approximately 13 pounds of marijuana. Confirming that none of these drugs were for personal use, law enforcement also discovered a money counter, scales, U.S. Currency, and ledgers and notes related to drug-trafficking.

Admitting to these facts, Defendant pled guilty to Counts Two and Three of the superseding indictment. Due to the United States having filed a criminal information pursuant to 21 U.S.C. § 851, the mandatory minimum for these counts are 15 and 10 years' incarceration respectively.

---

2   Defendant has admitted that he maintained this apartment for the specific purpose of facilitating his drug-trafficking operation.   See PSR ¶ 21.

2

(ECF 27.) The parties agreed to recommend a sentence to the mandatory minimum sentences on each count, to be served concurrently. See Plea Agreement ¶ 5.3

## II. MOTION FOR ADDITIONAL THIRD POINT REDUCTION

Pursuant to U.S. S. G. § 3E1.1(b), moves for an additional one-point reduction in Defendant's offense level for his timely acceptance of responsibility for his own criminal conduct. That would bring the total reduction in Defendant's offense level to three (3) points, and the probation department has taken that three-point reduction into account in the presentencing report and in determining Defendant's sentencing guidelines range. (PSR ¶¶ 35-38, 106.)

## III. POSITION ON SENTENCING

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

---

3   The United States has read Defendant's motion for variance sentencing (ECF 41), and assumes that Defendant erred in making such a motion, in light of the parties' plea agreement.

### A. Nature and Circumstances of the Offense; Provide Adequate Punishment

The significance of Defendant's criminal operation in this case cannot be overstated. Not only was he responsible for distributing significant quantities of heroin in the midst of controlled purchases conducted by law enforcement, but those transactions in conjunction with amount of drug quantities he possessed with the intent to distribute in his drug house suggest that Defendant was neither a novice nor an infrequent contributor to the opiod epidemic in the Commonwealth of Virginia. Stated differently, even putting aside Defendant's criminal history, this offense was not Defendant's first venture into drug trafficking, and he has left a significant imprint on the drug trafficking industry. And, but for law enforcement intervention, he would have continued to do so.

Moreover, the fact that Defendant maintained a separate apartment in downtown Richmond for this purpose further demonstrates the gravamen of his criminal conduct in this case. While Defendant's family and home life may have counseled against him running his drug-trafficking out of his own residence, he failed to turn away from drug-trafficking altogether. Instead, he hastened to run his operation from a more remote location so that he could continue to inject poison into the community, uninterrupted.

These facts counsel in favor of the recommended sentence in this case. Drug trafficking was a business Defendant chose, and his the other circumstances of his life could not influence him to choose a different path.

### B. History and Characteristics of the Defendant

While the United States would normally discuss a defendant's criminal history, first, Defendant's personal background, instead, is a better place to start as it bolsters the egregious

4

nature of Defendant's criminal conduct in this case.   Unlike most defendant's that are before this Court for similar crimes, Defendant's personal background offers none of the hallmarks of an individual who would choose to commit criminal acts of this sort.   First, Defendant, unlike many criminal defendants, grew up in a two-parent household where all of his basic needs were met. PSR ¶¶ 72-73.   Second, unlike many defendants, Defendant was not raised around crime nor was he subject to other environmental or familial abuses that may influence an individual to choose crime over other more productive methods of survival. PSR ¶¶ 72-74.   To the contrary, Defendant had a supportive family that continued to support him until the age of 21 and still has such a supportive family where he has regular contact with his parents and siblings and is married with children.   PSR ¶¶ 76-79.   Third, Defendant cannot claim, as some defendants can, that he was un- or underemployed—he has claimed steady employment from approximately 2014 through the time of his arrest.   See PSR ¶¶ 97-102.   It appears the only significant disruption of his employment during that time was his period of incarceration for a prior conviction in this Court. PSR ¶ 55.

Neither poverty, the lack of positive influences, nor desperation influenced Defendant's decision to choose drugs and crime over family and freedom.   Instead, it appears his decision was based on greed.

Defendant made this choice despite having already suffered the consequences of criminality in his past.   As already mentioned, Defendant was previously convicted for a drug-trafficking crime in this Court in 2014, for which he was sentenced to 50 months' incarceration. PSR ¶ 55.   In that case, he was held responsible for 119 grams of heroin based on controlled purchases conducted by law enforcement.   Id.   Instead of turning away from crime following

5

that significant period of incarceration, Defendant only amplified his efforts, now possessing with the intent to distribute approximately 10 times as much heroin, cocaine, and heroin. As a result, Defendant has also violated his period of supervised release for that prior conviction.

Apart from that prior federal conviction, Defendant's criminal history is a picture of someone who is either unwilling or unable to follow the law. From the age of 20, Defendant had a nearly annual encounter with the criminal justice system, many of which resulted in jail time. See PSR ¶¶ 41-54. As a 20-year-old, he earned his first adult drug conviction by possessing marijuana. PSR ¶ 42. As a 21-year-old, he continued to flout driving restrictions by committing two separate instances of driving on a revoked or suspended license. PSR ¶¶ 43-44. Then, at age 22, Defendant received his first period of active incarceration when he committed two possession of marijuana crimes. PSR ¶¶ 45-46. The following year, Defendant would engage in more serious behavior by possessing heroin, PSR ¶ 47; and, he continued to violate traffic laws. PSR ¶ 48. And, in 2008, at age 24, Defendant committed an assault on the mother of one of his children. PSR ¶ 49. In the subsequent years, Defendant would continue to disobey traffic laws and possess marijuana, occasionally leading to him serving active time in jail, until he finally committed the federal offense which earned him 50 months' incarceration. PSR ¶¶ 50-55.

While many of these prior convictions were misdemeanors and involved traffic crimes, they are only a part of the tapestry that is Defendant's criminal history which is both continuous and contiguous throughout most of his adult life. Such a person has not presented a history to this Court from which the Court can conclude that leniency is, at all, appropriate in this case. Accordingly, the recommended sentence of 15 years' incarceration is appropriate and should be imposed by the Court.

### C.      A Sentence of 15 years' incarceration Serves the Factors of § 3553

    1.      <u>Need to Deter Future Criminal Conduct and Protect the Public from Defendant's Future Criminal Conduct</u>

Defendant's choices in his past criminal conduct reveal him to be a continuing danger to the public which the court can best avoid by sentencing him to a term of imprisonment of 15 years, as the parties recommend.  Neither leniency in prior sentences, the prospect of abandoning his family, nor the real threat that drugs pose to the community have done the job of deterring Defendant.

Moreover, as already stated, none of the factors which can give the Court some assurances of future deterrence apply in this case.  For example, the fact that Defendant grew up with and maintained a healthy family life could suggest that he would not return to criminal behavior. However, those factors were in place for Defendant's entire life, yet, he, unlike anyone else in his family, still chose criminal behavior.  And, again, Defendant chose this behavior despite being employed at the time of his crimes and despite having just served multiple years of incarceration in the Bureau of Prisons.

Additionally, Defendant cannot refer to addiction as an impetus for his choice to return to drug trafficking.  While he may have once been dependent upon controlled substances, Defendant's prior period of incarceration actually served its intended purpose in that the RDAP program apparently assisted him in beating the habit of drug use.  According to Defendant, his most recent use of controlled substances was 2014.  See PSR ¶¶ 90-94.  In that light, it is not that Defendant was undeterred from crime due to his dependency on drugs, i.e. he dealt drugs to feed his habit; instead, it is that his greed and desire for money, notwithstanding the devastating effects that drugs have on the community, that he could not be deterred from pursuing this line of

7

criminal behavior. Someone so undeterred is best suited for removal from society for a significant period of incarceration which would prevent them from continuing to harm the general public.

        3. <u>Need to Avoid Unwarranted Disparities</u>

Defendant's level of criminal behavior and criminal and personal history which makes a sentence of 15 years' incarceration appropriate and commensurate with other defendants in a similar situation.

## III. CONCLUSION

For the reasons stated above, the United States submits that a sentence of 15 years' incarceration is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

        Respectfully submitted,

        G. Zachary Terwilliger
        United States Attorney

By:       /s/
        Stephen E. Anthony
        Assistant United States Attorney
        Virginia Bar No. 78246
        Assistant U. S. Attorney
        Office of the U.S. Attorney
        919 East Main Street, Suite 1900
        Richmond, Virginia 23219
        (804) 819-5400
        (804) 771-2316 (fax)
        Stephen.E.Anthony@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of November, 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF filing system which will then send a notification of such filing (NEF) to counsel of record.

/s/
Stephen E. Anthony
Virginia Bar No. 78246
Assistant U. S. Attorney
Office of the U.S. Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400
(804) 771-2316 (fax)
Stephen.E.Anthony@usdoj.gov