```
                                                                    1
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                        Richmond Division

 3


 4  UNITED STATES OF AMERICA       }
                                   }
 5  v.                             }   Criminal Case No.:
                                   }   3:20 CR 2
 6  LARRY BARNES, JR.              }

 7                                     December 2, 2020

 8

 9          COMPLETE TRANSCRIPT OF SENTENCING
          BEFORE THE HONORABLE HENRY E. HUDSON
10           UNITED STATES DISTRICT COURT JUDGE

11

12  APPEARANCES:

13  Stephen E. Anthony, Esquire
    OFFICE OF THE UNITED STATES ATTORNEY
14  919 East Main Street
    Suite 1900
15  Richmond, Virginia  23219

16       Counsel on behalf of the United States

17

    John B. Mann, Esquire
18  JOHN B. MANN PC
    4124 East Parham Road
19  Henrico, Virginia  23228

20       Counsel on behalf of the Defendant

21

22

23

24              KRISTA L. HARDING, RMR
                 OFFICIAL COURT REPORTER
25             UNITED STATES DISTRICT COURT
```

```
 1              (The proceeding commenced at 1:34 p.m.)
 2              THE COURT:  Good afternoon.
 3              MR. ANTHONY:  Good afternoon.
 4              MR. MANN:  Good afternoon, Your Honor.
 5              THE COURT:  All right, Ms. Pizzini, call our
 6  next case, please.
 7              THE CLERK:  Case Number 3:20 CR 2.  United
 8  States of America v. Larry Barnes, Jr.
 9              Mr. Stephen E. Anthony represents the United
10  States.
11              Mr. John B. Mann represents the defendant.
12              Are counsel ready to proceed?
13              MR. ANTHONY:  The United States is ready.
14              MR. MANN:  Yes, Your Honor.
15              THE COURT:  The matter is before the Court this
16  afternoon for sentencing on the pending charges, and
17  immediately following that a revocation hearing on the
18  petition filed by the U.S. probation officer.
19              Mr. Mann, have you received a copy of the
20  presentence report, and a copy of the U.S. probation
21  officer's computation of the United States Sentencing
22  Guidelines?
23              MR. MANN:  Yes, sir.
24              THE COURT:  And have you had an ample
25  opportunity to go over both those documents with your
```

1  client?
2          MR. MANN:  Yes, sir.  We have reviewed them
3  remotely, of course.
4          THE COURT:  All right.  Do you need additional
5  time to confer with your client about the content of the
6  report?
7          MR. MANN:  No, sir.
8          THE COURT:  All right.  With respect to the
9  presence report itself, are there any additions or
10 corrections to the report you want to bring to my
11 attention?
12         MR. MANN:  Judge, we have made what those
13 additions were, we have made them with the probation
14 officer, and we're satisfied.
15         THE COURT:  Excellent.  Excellent.
16         Mr. Anthony, any additions or corrections to the
17 text of the report?
18         MR. ANTHONY:  No, sir.
19         THE COURT:  All right.
20         The report will be ordered filed, made a part of
21 the record in the case, and this Court will adopt the U.S.
22 probation officer's factual findings and conclusions.
23         With respect to the United States Sentencing
24 Guidelines, the officer has determined that the defendant
25 has a Total Offense Level of 29, he's in Criminal History

1  Category IV.  His guideline range on Count 2 is 180
2  months; on Count 3, 121 to 151 months combined.
3          Guidelines properly computed, Mr. Mann?
4          MR. MANN:  Yes, sir.
5          THE COURT:  Mr. Anthony, properly computed?
6          MR. ANTHONY:  Yes, sir.
7          THE COURT:  Mr. Mann, you filed a number of
8  letters with the Court.  I think the defendant sent in
9  some letters from relatives and you sent to me a copy of
10 the letter filed by him.  Do you want these made a part of
11 the sealed record or the public record?
12         MR. MANN:  Sealed record, Your Honor.
13         THE COURT:  Sealed record.  All right.  They
14 will all be made a part of the sealed record.
15         Even the defendant's letter to me?
16         MR. MANN:  That could be public, Your Honor.
17         THE COURT:  All right.  That will be public.
18 The ones from other citizens will be made a part of the
19 sealed record.
20         MR. MANN:  Judge, and I assume the Court also
21 got the letter from Family Institute of Virginia regarding
22 the --
23         THE COURT:  Yes.
24         THE CLERK:  Some of Mr. Mann's letters, Your
25 Honor, were filed publically.  So if he would just get

```
 1  with me afterwards so we can sort that out.
 2              THE COURT:  Yes, ma'am.  Thank you very much.
 3              Yes, sir, I've got all that stuff.
 4              MR. MANN:  All right.  Thank you, Your Honor.
 5              THE COURT:  And confer with Ms Pizzini about
 6  what you want to be made part of the public record and
 7  what you want sealed, okay?
 8              MR. MANN:  Yes, sir.
 9              THE COURT:  All right.
10              Does either side have any evidence you want to
11  put on this afternoon?
12              Mr. Anthony, evidence, sir?
13              MR. ANTHONY:  None from the government.
14              THE COURT:  Mr. Mann, evidence, sir?
15              MR. MANN:  Judge, I have family members here.
16  His wife, his mother, his uncle --
17              And I forget.  You're?
18              UNIDENTIFIED:  His aunt.
19              MR. MANN:  And his aunt here supporting him.
20              THE COURT:  They'll be recognized for the
21  record.  Did you wish to call them as a witness?
22              MR. MANN:  Judge, I -- I don't -- they've sent
23  letters, so I think you -- and I know the Court has had an
24  opportunity to review the letters carefully.
25              THE COURT:  I have.
```

1          MR. MANN:  So I don't think we need to bring --
2              You don't want anybody to testify, do you,
3  Larry?
4              I think we're fine, Judge.
5              THE COURT:  All right.  Very well.
6              Now, Mr. Mann, you did file a motion for a
7  downward variance.
8              MR. MANN:  I did, Judge.
9              THE COURT:  Pardon?
10             MR. MANN:  I did.  Yes, sir.
11             THE COURT:  Do I take it you want to withdraw
12 the plea agreement?
13             MR. MANN:  No, sir.
14             THE COURT:  All right.  Then I'll hear you on
15 your downward variance.  Come on up if you wish to argue
16 it, but you're on very soft turf.
17             MR. MANN:  Yes, sir.
18             Your Honor, I understand what the mandatory
19 minimums were in this -- are in this case, which called
20 for an active sentence of 180 months.  And we agree that,
21 as they say, it is what it is.
22             We just want to point out to the Court if the
23 Court felt that there were some reasons under 3553 that
24 the Court would be willing to depart from that, that we
25 just wanted to bring that to the Court's attention.  As I

1  said, mainly looking at the fact that the guideline
2  sentence computed is a Criminal History of IV, and an
3  offense level of 29, which we agreed to, and that a
4  sentence in the guideline range would be more appropriate
5  than the enhancement that the government chose to do under
6  851.
7         THE COURT:  All right.  Well, Mr. Mann, this is
8  not this defendant's first conviction for drug
9  distribution.  He has a prior conviction for distributing
10 heroin.  He is not a street-level dealer.  He's not even a
11 second- or third-level dealer.  He's a drug kingpin.
12        He had 2.5 pounds of heroin.  He had 2 pounds of
13 cocaine.  He had 13 pounds of marijuana.  He was armed
14 with a firearm and had a money counter.
15        Motion is denied.
16        MR. MANN:  Thank you, Judge.
17        The only thing I will say, Judge, is the firearm
18 was not found where the drugs were found, of course.
19        THE COURT:  Well, then I stand corrected on
20 that.
21        MR. MANN:  Thank you.
22        THE COURT:  All right.  Very well.
23        MR. MANN:  I don't know that --
24        There was a money counter there?  May have been.
25        I don't remember, Judge.  I'll take the Court at

1  its word.
2          THE COURT:  According to the presentence report
3  it was, but that's fine.
4          MR. MANN:  Yes.
5          THE COURT:  All right.  Very well.
6          With respect to the sentencing itself,
7  Mr. Anthony, I'll hear from you, sir.
8          And we'll deal with the revocation second.
9          MR. ANTHONY:  Thank you, Judge.  And good
10 afternoon, again.
11         THE COURT:  Good afternoon, sir.
12         MR. ANTHONY:  I'll be fairly brief here.
13         Obviously, the parties have recommended a
14 sentence at the statutory minimum for each Counts 2 and 3
15 to be served concurrently, which would be a sentence of 15
16 years on Count 2, and 10 on Count 3.
17         All I'll say, Judge, is this is a tragic case.
18 And I think it's a tragic case for several reasons:  One,
19 Mr. Barnes had no reason to ever be in the criminal
20 justice system.  We have an individual who had a far
21 different background from most of the defendants that this
22 Court sees.
23         THE COURT:  I fully agree.  He was raised by
24 very responsible parents.  They gave him every
25 opportunity.  He's not the typical person, at least from a

```
 1  family perspective.  I agree with you totally.
 2          MR. ANTHONY:  Yes, sir.
 3          Not only that, Judge, up until this first
 4  conviction in this court in 2014, it looks throughout
 5  2011, when he first started distributing heroin, he was
 6  steadily employed.  He was a barber apprentice, had not
 7  taken the exam for the full barbership, and then had a
 8  strong family.  So he had every reason not to get into
 9  drug trafficking, yet he did, which is the second reason
10  why it's tragic because we look at criminal history and we
11  compare that to other members of his family, it appears
12  he's the only one who has ever really had these encounters
13  with the criminal justice system.
14          But not only that, his encounters were
15  contiguous from the age of 21 up until when he committed
16  his first felony conviction.  It was almost yearly he was
17  having some contact with the criminal justice system, and
18  then that culminated in the felony distribution conviction
19  in this court.
20          And then lastly, there was -- this case is
21  tragic because he had no reason to come back here.  He was
22  released in 2017, he was on supervised release.  Again,
23  steadily employed, had family support.
24          But even beyond that, Judge, he was able to,
25  from his representations, kick the addictions he had, some
```

1  of them at least, with respect to drugs.  It looks like
2  the heroin or cocaine or ecstasy or even marijuana that he
3  was using, he reports, and in the presentence report, that
4  his last use was in 2013.  So this isn't a person who is
5  driven by his own drug addiction to go back to dealing
6  drugs.
7           And not only that, he took the 500-hour RDAP
8  program while incarcerated.  And he, in that sense, did
9  what we want folks incarcerated to do:  Get the treatment
10 they need, overcome the addictions they have, and
11 hopefully when they get out to serve a more commendable
12 life in society.  And Mr. Barnes did just the opposite.
13           As the Court noticed, not only was he back to
14 distributing heroin, he had amplified his practice.  He
15 was involved in a kilogram, or more, of heroin.  He was
16 involved in a kilogram of cocaine.  Thirteen pounds of
17 marijuana.
18           He was renting an apartment here in the City of
19 Richmond to facilitate his drug trafficking.  He was no
20 novice.  This was not a rare return to criminal activity.
21 This is something he set out to do, and he was doing it to
22 a large scale.
23           So we ask that the Court adopt the parties
24 recommendation, sentence him to a period of incarceration
25 of 15 years on Count 2, and then 10 on Count 3.

```
 1              THE COURT:  Yes, sir.
 2         Mr. Mann.
 3         Mr. Mann, let me begin by saying you have worked
 4  out an excellent disposition.
 5              MR. MANN:  Sir?
 6              THE COURT:  I say you have worked out an
 7  excellent disposition for your client in this case.  Based
 8  on these facts, if this case had gone to trial, goodness
 9  knows what kind of exposure he would have had.  So you
10  have served your client quite well.
11              MR. MANN:  Well, thank you, Judge.
12         But -- and I will just simply say to the Court I
13  have been involved with Larry for a number of years, as
14  this Court can see from his record of exposure to the law.
15  This is not the first time I've represented Larry.
16         I will say that I have -- it's tragic, Judge.
17  And I will say it's tragic on my part because I did not
18  expect to be back here with Larry Barnes in this kind of
19  situation.
20              THE COURT:  Well, he was doing well on
21  supervised release until this incident happened.
22              MR. MANN:  And he was very -- and he -- and he's
23  that kind of person, Judge.  He's a family person.  His
24  wife is very loyal to him.  His family is very loyal to
25  him.
```

1   I will say for the Court the only thing that I
2 would take a little issue about is the family situation.
3 Unfortunately, his father, who recently passed, was a drug
4 addict and maybe a small time drug dealer. But be that as
5 it may, Larry understands he got himself into this
6 problem. I think, Your Honor, that the only thing I can
7 really say, and I will argue this or argue this regarding
8 the revocation, is that --
9          THE COURT: I'm going to take that up
10 separately.
11         MR. MANN: Sir?
12         THE COURT: I'm going to take the revocation up
13 separately.
14         MR. MANN: I understand that.
15         THE COURT: Okay.
16         MR. MANN: And I'm just simply saying, Judge, we
17 agree with the -- well, we don't -- we agree it's an
18 appropriate sentence in light of the 851 enhancement. And
19 I would ask the Court just to consider the fact of the
20 guidelines, consider the fact that Larry has an addiction
21 not only with drugs and alcohol, but with gambling. And I
22 think that led to a lot of what he was doing.
23         As far as he wasn't the person that was bringing
24 these drugs to the city, he was the one who received the
25 drugs, and they were to be distributed by other people.

1 So from that standpoint -- and he is culpable for what he
2 did, and he is going to ask the Court for mercy from you.
3         Thank you.
4         THE COURT: All right. Very well.
5         Mr. Barnes, if you would come forward, please.
6         Mr. Barnes, yours is somewhat of a disappointing
7 case because you were doing so well on supervised release
8 until you got involved in this large-scale drug
9 trafficking operation here. You had 2.5 pounds of heroin.
10 That's a lot of dosages. Two pounds of cocaine and
11 13 pounds of marijuana.
12         As I mentioned, you're not even a -- you are a
13 major drug trafficker. You're not a small-scale operator.
14 You're certainly not the type of person that's a
15 street-level dealer that we have in this case. You were a
16 kingpin type of drug trafficker, unfortunately.
17         You do have a good supportive family. I agree
18 with Mr. Mann. But, unfortunately, you have got yourself
19 involved in large-scale drug trafficking, and the penalty
20 is tough, sir. I want to hear from you before I decide
21 what sentence is appropriate. Go right ahead.
22         MR. BARNES: Yes, I just want to -- I want to
23 start off and say I apologize to the Court and my family,
24 my children, my mom, and everybody. And I want to
25 apologize to the people whose lives I may have ruined due

1 to my criminal activity.

2 It has been a long road for me. My criminal
3 decisions, you know, it was kind of tough for me, working,
4 losing a job, getting another job, getting laid off,
5 trying to find another job. I'm not trying to -- I'm not
6 trying to make no excuses to you. And I understand, you
7 know, where the Court at -- where the Court is at with me
8 today.

9 But I am a good person, you know, what I mean?
10 And it might look like I'm a bad person, but I'm really
11 not, you know. I just want to be a good citizen to
12 Richmond, you know what I mean? And if you find it some
13 way in your heart to go under my guidelines, that would be
14 well-appreciated.

15 I've really had dark nights since my dad passed,
16 but I try not to think about that and stress myself out
17 about it.

18 And I just want to say I'm sorry to everybody.

19 THE COURT: I see no reason to depart from the
20 guidelines in this case. I think the recommendation --
21 the agreed recommended sentence by your attorney and the
22 prosecutor are appropriate. If you had gone to trial, you
23 may have been looking at a significantly greater sentence.
24 So your attorney has served you quite well in this case.
25 But I see nothing in the record that would persuade me

1  that the judgment of your attorney and the prosecutor were
2  wrong.
3  You, as I mentioned a couple times previously,
4  were not just a small-time drug trafficker. You are a
5  major drug trafficker, and that is what the enhancement is
6  designed to address.
7  Mr. Barnes, I've reviewed the U.S. Sentencing
8  Guidelines as advisory only, and determined that they were
9  appropriately computed by the U.S. probation officer. I
10 have reviewed all the factors set forth in 18, United
11 States Code, Section 3553(a). And in this case, of
12 particular importance are the facts and circumstances of
13 the case.
14 I also consider the agreed recommendation by
15 your attorney and the United States in this case, which I
16 find is appropriate.
17 So a sentence which I think is adequate, but not
18 longer than necessary, to serve the guidelines, promote
19 respect for the law and provide for deterrence, would be
20 commitment to the U.S. Bureau of Prisons for a term of 180
21 months on -- a term of 180 months, which will consist of
22 180 months on Count 2, and 120 months on Count 3, to be
23 served concurrently.
24 I am going to recommend to the Director of the
25 Bureau of Prisons that you receive any mental health

1  counseling that they feel is necessary.  I noticed in the
2  health and mental health portion of the presentence report
3  you may have some psychological conditions that need to be
4  addressed.  I'm going to recommend to the Bureau of
5  Prisons that that care and counseling be available to you
6  during your period of confinement.
7        Even though you've been through the 500-hour
8  program of drug treatment, you appear to continue to have
9  a drug problem.  I'm going to recommend to the Bureau of
10 Prisons that you be allowed to participate in any program
11 of drug treatment available at your institution of
12 designation.
13       Upon your release from confinement, you will be
14 placed on supervised release for a term of 10 years.  That
15 will consist of 10 years on Count 2, and 8 years on
16 Count 3, to be served concurrently.
17       Within 72 hours of your release from custody,
18 wherever you may be, you will be required to report to the
19 U.S. Probation Office in that district.  Your supervised
20 release begins at that time.  It is for a period of 10
21 years.
22       Now, as you are aware, while you are on
23 supervised release you may not violate any federal, state
24 or local laws.  You can't have in your possession any kind
25 of firearm, or dangerous or destructive device.

```
 1                 You also can't have in your possession any
 2   narcotic drug or controlled substance unless you have a
 3   valid prescription issued by a licensed doctor.
 4                 From looking over the presentence report, it
 5   does not appear that you have a serious drug use problem
 6   at this point, so I'm going to suspend the mandatory
 7   requirement that you participate in a drug abuse program
 8   and drug abuse testing.  However, if the U.S. probation
 9   officer feels that you need to be tested for drug abuse,
10   he or she has the authority to require you to take any of
11   those tests that he or she feels is appropriate.
12                 Now, in addition to the standard terms and
13   conditions of supervised release, which have been adopted
14   by this Court, the Court will also add a couple of special
15   conditions.  You will be required to participate in, and
16   complete, any program of mental health treatment that the
17   probation officer may recommend.  And you will be required
18   to pay the costs of that treatment.
19                 If you're required to participate in a drug
20   treatment program, you will be required to execute a
21   waiver of confidentiality.  That enables your probation
22   officer to communicate with your mental health counselor
23   to make sure that you're participating in that mental
24   health program as directed.
25                 You will also be required to provide the
```

probation officer with access to any financial information that he or she may need in order to supervise you.

I have reviewed your net worth, your earning capacity and the sentence you're receiving. I don't think you're capable of paying a fine. No fine will be imposed in this case. However, you will be required to pay a special assessment of $100 on both Counts 2 and 3 for a total of $200.

The special assessment is due and payable today. If it is not paid by the time you complete your period of confinement, you will pay it as a special condition of your supervised release in an amount of not less than $25 per month beginning 60 days after supervised release begins until it is paid in full.

Any forfeiture order entered in this case will become a part of the final judgment and commitment order.

Mr. Barnes, as part of your plea agreement you have waived your right of appeal as to almost every issue in this case. But if you feel I have done anything erroneously or improper that you wish to appeal, that appeal must me noted within 14 days. So before you leave court today, take a moment and talk to Mr. Mann about whether anything has occurred in this case you wish to appeal because if you wish to appeal any issues, those issues must be raised within 14 days, understood?

1           MR. BARNES:  Yes.

2           THE COURT:  All right.

3           Anything further with respect to the sentencing?

4           I think that Count 1 should be dismissed. Count 1, is there a motion to dismiss?

6           MR. ANTHONY:  Move to dismiss Count 1.

7           THE CLERK:  And the original indictment.

8           THE COURT:  And the original indictment.  They will both be ordered dismissed.

10          You may have a seat.

11          (The proceeding concluded at 1:55 p.m.)

REPORTER'S CERTIFICATE

       I, Krista Liscio Harding, OCR, RMR, Notary Public in and for the Commonwealth of Virginia at large, and whose commission expires March 31, 2024, Notary Registration Number 149462, do hereby certify that the pages contained herein accurately reflect the notes taken by me, to the best of my ability, in the above-styled action.
       Given under my hand this 20th day of January, 2022.

                              /s/
                       Krista Liscio Harding, RMR
                       Official Court Reporter